Phillip Lamberson
State Bar No. 00794134
Jason A. Enright
State Bar No. 24087475
**WINSTEAD PC**
500 Winstead Building
2728 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 745-5400
Facsimile:  (214) 745-5390
plamberson@winstead.com
jenright@winstead.com

**ATTORNEYS FOR CHARLES AND KATHLEEN MASON**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| **In re:** § § § § § § § | | Case No. 23-30771-sgj7<br><br>Chapter 7 |
| **CARL GERARD DORVIL,** | | |
| Debtor. | | |
| **CHARLES AND KATHLEEN MASON,** § § § § § § § § § § | | Adversary No. 23-_____ |
| Plaintiffs, | | |
| vs. | | |
| **CARL GERARD DORVIL,** | | |
| Defendant. | | |

## ORIGINAL COMPLAINT
## OBJECTING TO DISCHARGEABILITY OF A DEBT UNDER 11 U.S.C. § 523

**TO THE HONORABLE STACEY G. C. JERNIGAN, UNITED STATES BANKRUPTCY JUDGE:**

Charles and Kathleen Mason (the "Plaintiffs"), file this *Original Complaint Objecting to Dischargeability of a Debt under 11 U.S.C. § 523* (this "Complaint") against Carl Gerard Dorvil

(the "Debtor"), the debtor in the above-captioned bankruptcy case (the "Bankruptcy Case") and the defendant in the above-captioned adversary proceeding (the "Adversary Proceeding"), and respectfully states as follows:

## I. JURISDICTION, VENUE, AND STATUTORY PREDICATE

1. This Court has subject matter jurisdiction over the Bankruptcy Case and this Adversary Proceeding pursuant to 28 U.S.C. §§ 157 and 1334. "[D]eterminations as to the dischargeability of particular debts" and "objections to discharges" are core proceedings. 28 U.S.C. § 157(b)(2)(I)-(J). Venue of the Adversary Proceeding in this District is proper under 28 U.S.C. § 1409.

2. This matter arises under the laws of the United States of America. The statutory predicate for the relief sought herein is pursuant to 11 U.S.C. § 523 and Federal Rule of Bankruptcy Procedure 7001(6).

3. The Plaintiffs hereby consent to the Court's entry of a final judgment resolving this Adversary Proceeding.

## II. PARTIES

4. Charles Mason is an individual who resides at 5 Wagener Place, Hilton Head, South Carolina 29928, and may be served with pleadings and process in this Adversary Proceeding through undersigned counsel.

5. Kathleen Mason is an individual who resides at 5 Wagener Place, Hilton Head, South Carolina 29928, and may be served with pleadings and process in this Adversary Proceeding through undersigned counsel.

6. The Debtor is an individual who resides at 1114 Newcastle Dr., Rockwall, Texas 75032.

### III.     RELEVANT PROCEDURAL BACKGROUND

7. On April 20, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code. On the same day, Jeffrey H. Mims (the "Trustee") was appointed as chapter 7 trustee in the Bankruptcy Case.

8. On May 4, 2023, the Debtor filed his schedules of assets and liabilities in the Bankruptcy Case, in which he listed the Plaintiffs' claim as an unsecured claim, in the amount of $2,000,000.00, and as contingent, unliquidated, and disputed. *See* Case 23-30771, Docket No. 24 at 14.

9. The deadline to object to discharge or to challenge whether certain debts are dischargeable is July 17, 2023. Case 23-30771, Docket No. 4.

### IV.     RELEVANT FACTUAL BACKGROUND

**A.     The Debtor, Agile Connections, LLC, and the "Renaissance" Business Plan**

10. At all times relevant herein, the Debtor was an officer and director, as well as the sole member and owner, of Agile Connections, LLC ("Agile").[1] Agile was organized as a Texas limited liability company on June 17, 2011. On February 8, 2015, Agile filed an assumed name certificate with the Texas Secretary of State, pursuant to which it adopted the assumed name "Renaissance Global Investment Partners."

11. The Debtor and his business partner in Renaissance Global Investment Partners, Christopher Sahliyeh ("Sahliyeh"), attended college together years earlier at Southern Methodist University and reconnected by chance in late 2014 or early 2015. The Debtor knew that Sahliyeh's

---

[1] Based on Agile's most recent public information report filed with the Texas Comptroller of Public Accounts on September 24, 2014, and its assumed name certificate filed with the Texas Secretary of State on February 8, 2015, the Debtor was as of such dates an officer and director of Agile. On information and belief, the Debtor remained an officer and/or director of Agile through and including May 2016 and afterwards.

parents were wealthy and learned when they reconnected that Mr. Sahliyeh was a financial advisor at Morgan Stanley. The Debtor ultimately asked Sahliyeh to join him in founding Renaissance Global Investment Partners. Because both the Debtor and Sahliyeh had minority status, the Debtor informed Sahliyeh that Renaissance's business plan would be to identify and ultimately acquire a brokerage firm to operate on a minority owned and managed basis. This would allow them to seek and obtain clientele such as pension funds that desired to commit a certain allocation of their business to minority owned and managed businesses.

12. The Debtor prepared and provided to Sahliyeh, and ultimately executed with Sahliyeh, a Limited Liability Company Operating Agreement for "Renaissance Global Investment Partners, LLC." This Limited Liability Company Operating Agreement reflected that the Debtor had filed articles of organization for "Renaissance Global Investment Partners, LLC" with the Texas Secretary of State on February 9, 2015 (which was untrue because, in truth, on February 8, 2015, the Debtor actually filed only an assumed name certificate for Agile, adopting the assumed name "Renaissance Global Investment Partners"), and that the Debtor and Sahliyeh were co-managing members and each a 50% owner of "Renaissance Global Investment Partners, LLC."

13. It was on this basis that Sahliyeh began to seek, and ultimately raised, approximately $8,000,000 from investors (including his parents and, as described below, Plaintiffs) to pursue the "Renaissance" business plan. Sahliyeh did not know at any relevant time herein (through May 2016 and for quite some time thereafter) that there was no "Renaissance Global Investment Partners," but it was in fact just a fiction—an assumed name and alter ego of Agile.

14. Agile's charter was forfeited by the Texas Secretary of State on January 29, 2016, pursuant to Section 171.309 of the Texas Tax Code. Agile's charter and, on information and belief,

its corporate privileges were never revived. Consequently, the Debtor is jointly and severally liable with Agile for Agile's debts pursuant to Section 171.255 of the Texas Tax Code.[2]

**B.**     **The Notes, Agile's Default, and Discovery of the Debtor's Fraud**

15.     In 2015, Plaintiffs were approached by Sahliyeh, as a representative of Agile (doing business under the assumed name Renaissance Global Investment Partners), regarding a loan opportunity with Agile, which was ostensibly raising capital for the purpose of acquiring a brokerage firm to operate on a minority owned and managed basis.

16.     On or about January 1, 2016,[3] Plaintiffs lent $1,500,000.00 to Agile and Agile issued that certain Corporate Bond Debenture (the "January Note") to Plaintiffs in the original principal amount of $1,500,000.00. A copy of the January Note is attached hereto and incorporated by reference herein for all purposes as **Exhibit A**.

17.     On or about May 1, 2016,[4] Plaintiffs lent an additional $500,000.00 to Agile and Agile issued that certain Corporate Bond Debenture (the "May Note") to Plaintiffs in the original principal amount of $500,000.00. A copy of the May Note is attached hereto and incorporated by reference herein for all purposes as **Exhibit B**. The January Note and the May Note are collectively referred to herein as the "Notes."

18.     It is undisputed that the Debtor himself prepared both the Notes for the Plaintiffs' loan transactions, listing the fictitious "Renaissance Global Investment Partners, LLC" as Maker and naming the Plaintiffs as the Holder.

---

[2] Although the text of Section 171.255 of the Texas Tax Code refers to corporations, it equally applies to limited liability companies. *See, e.g., Hovel v. Batzi*, 490 S.W.3d 132, 136 (Tex.App.—Houston [1st Dist.] 2016, pet. denied).

[3] The money was actually remitted by Plaintiffs to Agile in part in December 2015 ($500,000) and in part in January 2016 ($1,000,000), although the January Note is dated January 1, 2016.

[4] [4] The money was actually remitted by Plaintiffs to Agile on May 26, 2016, although the May Note is dated May 1, 2016.

19. At the time the Plaintiffs made these loans, the Debtor knew the Plaintiffs were retired and were liquidating retirements funds in order to make the loans.

20. The January Note bore non-default interest at 8%, was payable in quarterly installments of interest in the amount of $30,000 each on the first day of each quarter commencing on April 1, 2016, and its principal amount and all accrued and unpaid interest matured and became due on January 1, 2017. The January Note bore interest at the default rate of 14.5% after the first interest payment default event occurred on April 1, 2016. Plaintiffs received their last payment under the January Note on August 21, 2018.

21. The May Note bore non-default interest at 8%, was payable in quarterly installments of interest in the amount of $10,000 each on the first day of each quarter commencing on June 30, 2016, and its principal amount and all accrued and unpaid interest matured and became due on May 1, 2017. The May Note bore interest at the default rate of 14.5% after the first interest payment default event occurred on June 30, 2016. Plaintiffs received their last payment under the May Note on August 21, 2018.

22. Plaintiffs received quarterly interest payments as contemplated by the Notes until August 2018, although not all interest payments were received by Plaintiffs in a timely manner as required by the Notes. No further principal or interest payments were received by Plaintiffs after August 2018.

23. Plaintiffs subsequently inquired with Sahliyeh as to the status of the loans made by Plaintiffs to Agile. Sahliyeh revealed to Plaintiffs that he was no longer associated with Agile, that Agile had not in fact acquired a brokerage firm, and that Agile and its money were actually controlled by the Debtor. On information and belief, Agile and the Debtor knew that Agile never intended to utilize the money loaned by Plaintiffs to acquire an interest in a brokerage firm, but

instructed, induced, and/or permitted Sahliyeh to communicate that statement to Plaintiffs in order to induce Plaintiffs to lend money to Agile.

24. Further, the Plaintiffs later discovered the Debtor's efforts to obtain the loans from the Plaintiffs were part of a classic Ponzi scheme. The Debtor took the Plaintiffs' money for personal use as soon as it was available, and for the next two and a half years, the Debtor made interest payments to the Plaintiffs using other investors' funds.

25. Plaintiffs, through counsel, sent written demand to Agile and the Debtor for repayment of the Notes, by letter dated April 5, 2019, to which no response was received.

**C.     State Court Litigation**

26. On May 23, 2019, the Plaintiffs filed their Original Petition against Agile and the Debtor, styled as *Charles and Kathleen Mason, Plaintiffs. v. Agile Connections, LLC et al.*, Cause No. DC-19-07426, in the 162nd Judicial District of Dallas County, Texas (the "<u>State Court Litigation</u>").[5]

27. On April 28, 2020, the Plaintiffs filed their First Amended Petition against Agile and the Debtor, in which the Plaintiffs asserted causes of action against the Debtor for breach of contract, money had and received, conversion and theft, fraudulent inducement and fraud, negligent misrepresentation, and conspiracy in connection with Notes.

28. During the State Court Litigation, Plaintiffs subpoenaed Veritex Bank, Agile's depository bank, for all documentation regarding the bank account into which the Debtor had deposited their loan proceeds. The responsive documents produced by Veritex Bank reflected the following:

---

[5] Agile has not been represented by counsel in the State Court Litigation since the state court approved the withdrawal of its original counsel by order dated May 22, 2020.

- Sahliyeh never had authority over such bank account, which authority was held at all times by the Debtor and a Mr. Christopher Battle.[6]

- The Debtor signed all checks written on the account.

- Plaintiffs' $2,000,000 was deposited into such bank account, along with over $6,000,000 from other sources. With respect to Plaintiffs' funds deposited by the Debtor into Agile's bank account:

    **(A)** Plaintiffs' check no. 386, dated December 15, 2015 in the amount of $500,000 and made payable to "Renaissance Global Investment Partners, LLC," was deposited by the Debtor into Agile's bank account on December 16, 2015. On December 18, 2015 (two days later), the Debtor transferred $200,000 of those funds to the account of his company Group Excellence Management and an additional $200,000 of those funds to the account of his company P413 Management, LLC.

    **(B)** Plaintiffs' check no. 389, dated January 11, 2016 in the amount of $500,000 and made payable to "Renaissance Global Investment Partners, LLC," was deposited by the Debtor into Agile's bank account on January 13, 2016. On January 15, 2016 (two days later), the Debtor transferred $350,000 of those funds to his personal bank account.

    **(C)** Plaintiffs' check no. 390, also dated January 11, 2016 and also in the amount of $500,000 and made payable to "Renaissance Global Investment Partners, LLC," was deposited by the Debtor into Agile's bank account on January 20, 2016. On January 25, 2016 (three business days later), the Debtor transferred the full $500,000 of those funds to the account of his company P413 Management LLC.

    **(D)** Plaintiffs' check no. 395, dated May 26, 2016 in the amount of $500,000 and made payable to "Renaissance Global Investment Partners, LLC, was deposited by the Debtor into Agile's bank account on May 26, 2016. On June 14, 2016, the Debtor transferred $23,000 of those funds to the account of his company Group Excellence Management, on June 30, 2016 the Debtor transferred $10,000 of those funds to the account of his company Group Excellence Management, and on June 30, 2016 the Debtor transferred an additional $400,000 of those funds to the account of his company P413 Management, LLC.

- It appears that over $1,100,000 was withdrawn in cash (or cash equivalents) from such account by the Debtor for unknown reasons.

---

[6] On information and belief, Mr. Battle never exercised such authority at any relevant time herein, and all debits and credits to Agile's bank account at Veritex Bank were made by the Debtor at all relevant times herein.

**ORIGINAL COMPLAINT** Page 8 of 15

- In excess of $4,000,000 was wired or paid to the Debtor and/or other companies that appear to be affiliated with the Debtor for unknown reasons.

- There were numerous account transactions with gold, diamond, and jewelry merchants for questionable reasons.

- Other transactions included a check to a car dealership for a GMC Yukon leased or purchased by the Debtor, a check to the U.S. Department of the Treasury for payment of the Debtor's personal taxes, and a wire transfer to Tesla Motors for over $100,000 for a vehicle that was titled in the Debtor's name.

29. The initial trial setting for the State Court Litigation was August 25, 2020. After being reset numerous times in 2021 and 2022, trial ultimately began on April 17, 2023.

30. After the Debtor filed this Bankruptcy Case on April 20, 2023, the Plaintiffs sought and were granted relief from the automatic stay by this Court to allow the jury to render a verdict and for the state court to enter judgment in the State Court Litigation. *See* Case 23-30771, Docket No. 22.

31. The trial continued on June 5, 2023, and concluded on June 9, 2023.

32. After the close of evidence, but before the charge was submitted to the jury and before the jury returned its verdict, Plaintiffs moved for default judgment against Agile. After considering the pleadings, the papers on file in the case, and the evidence presented on liability, damages, and attorneys' fees, the state court granted Plaintiffs' motion for default judgment and rendered its Partial Default Judgment Against Agile Connections, LLC on June 9, 2023.[7]

33. Also on June 9, 2023, the jury returned its verdict. The jury found the Debtor liable for Plaintiff's claims for money had and received, conversion, theft, fraudulent inducement, fraud by misrepresentation, fraud by omission, negligent misrepresentation, and conspiracy, with

---

[7] The default judgment against Agile was partial because Plaintiffs had yet to submit their request for attorneys' fees and costs, which the parties agreed the Plaintiffs would submit within 10 days of the jury's verdict.

damages in the following amounts: (a) actual damages in the amount of $4,868,346.37; (b) statutory damages for theft of $1,000.00; and (c) exemplary damages in the amount of $1,000,000.00.

34. On June 16, 2023, Plaintiffs submitted to the state court their motion for attorneys' fees and final judgment, with the proposed final judgment, which included as damages against the Debtor: attorneys' fees in the amount of $273,155.00; expenses in the amount of $7,515.48; and costs of court.

35. The jury also found the Debtor jointly and severally liable for the damages awarded to Plaintiffs against Agile (collectively, with the damages listed above, the "Plaintiffs' Debt").[8]

36. As of the filing of this Complaint, the proposed final judgment has been submitted to the state court, but has not yet been signed. A hearing has been set for the state court's consideration of the proposed final judgment on July 26, 2023.

## V. CAUSES OF ACTION

### Count 1: Objection to Dischargeability Under 11 U.S.C. § 523(a)(2)(A)

37. Plaintiffs incorporate the preceding paragraphs as if set forth fully herein.

38. Under section 523(a)(2)(A) of the Bankruptcy Code:

> A discharge under section 727 [of the Bankruptcy Code] does not discharge an individual of any debt . . . for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]

11 U.S.C. § 523(a)(2)(A).

---

[8] The proposed final judgment includes damages against Agile in the following amounts: (a) actual damages in the amount of $2 million; (b) pre-judgment interest at the rate of 14.5%, totaling $2,816,706.32; (c) statutory damages for theft of $1,000.00; (d) exemplary damages in the amount of $4,810,944.79; (e) attorneys' fees in the amount of $273,155.00; (f) expenses in the amount of $7,515.48; and (g) costs of court.

39. To show actual fraud under section 523(a)(2)(A), the plaintiff must prove (i) a material representation was made, (ii) the representation was false, (iii) when the representation was made, the party making it knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion, (iv) the representation was made with the intent that the creditor should act upon it, (v) the creditor acted in reliance on the representation, and (vi) the creditor thereby suffered an injury. *See Saenz v. Gomez*, 899 F.3d 384, 391 (5th Cir. 2018) (citing *In re FirstMerit Bank*, N.A., 52 S.W.3d 749, 758 (Tex. 2001)).

40. To show false pretenses and false representations under section 523(a)(2)(A), the creditor must prove: (i) the existence of a knowing and fraudulent falsehood, (ii) describing past or current facts, (iii) that was justifiably relied upon by the creditor. *See RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1293 (5th Cir. 1995). With respect to a future action, the creditor must establish that the party making the representation had no intention of fulfilling the promise or representation at the time the representation was made. *Beshears v. McCool (In re McCool)*, Adv. No. 16-43206, 2019 BL 372248, at *17 (Bankr. N.D. Tex. Sept. 30, 2019) (citing *In re Allison*, 960 F.2d 481, 484 (5th Cir. 1992)).

41. The Debtor committed actual fraud in connection with the Notes. The Debtor, through his agents or representatives (specifically, but without limitation, Sahliyeh), made material representations to Plaintiffs regarding the purpose for which the moneys loaned by Plaintiffs to "Renaissance" (but in fact, unknown to everyone except the Debtor, in truth Agile) would be used. Such representations were false. The Debtor knew these representations were false when made, and/or made them recklessly, as a positive assertion, without any knowledge of the truth. The Debtor intended for Plaintiffs to rely and act upon these misrepresentations, and Plaintiffs did rely

on these representations. As a result of Plaintiffs' reliance upon the Debtor's misrepresentations, Plaintiffs suffered damages, which constitute the Plaintiffs' Debt.

42. The Debtor also acted with false pretenses and made false representations in connection with the Notes. When the Debtor, through his agents or representatives, represented to Plaintiffs that the money loaned by Plaintiffs was for the purpose of acquiring a brokerage firm, the Debtor knew the statements were fraudulent falsehoods, the Debtor had no intention of using the loans for such purpose, and Plaintiffs justifiably relied upon such representations. Thus, the Debtor acted with false pretenses and made false representations to obtain the loans made by Plaintiffs to Agile, which form the basis of the Plaintiffs' Debt.

43. Further, to the extent necessary, the Plaintiffs' Debt is nondischargeable under section 523(a)(2)(A) because it was obtained in connection with false pretenses, false representations or actual fraud committed by Agile or its representatives. *Cf. Bartenwerfer v. Buckley*, 143 S. Ct. 665, 672-76 (2023) (holding that section 523(a)(2)(A) applied to a debt obtained by fraud committed by the debtor's spouse, not the debtor).

44. The Court should therefore except the Plaintiffs' Debt from discharge under section 523(a)(2)(A) of the Bankruptcy Code.

### Count 2: Objection to Dischargeability Under 11 U.S.C. § 523(a)(4)

45. Plaintiffs incorporate the preceding paragraphs as if set forth fully herein.

46. Under section 523(a)(4) of the Bankruptcy Code, a "discharge under section 727 [of the Bankruptcy Code] does not discharge an individual of any debt . . . for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny; [.]" 11 U.S.C. § 523(a)(4).

47. Under section 523(a)(4), "[e]mbezzlement is . . . the fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come." *Miller v. J.D. Abrams Inc. (In re Miller)*, 156 F.3d 598, 602 (5th Cir. 1998).

48. Under section 523(a)(4), "'larceny' means the fraudulent and wrongful taking and carrying away of the property of another with intent to convert such property to the taker's use without the consent of the owner." *S & S Food Corp. v. Sherali (In re Sherali)*, 490 B.R. 104, (Bankr. N.D. Tex. 2013) (citing *Smith v. Williams (In re Smith)*, 253 F.3d 703, 2001 WL 498662, *2 (5th Cir. 2001) (unpublished)).

49. Plaintiffs entrusted the Debtor and Agile with the money they loaned to Agile, and the Debtor fraudulently appropriated the money loaned by utilizing it for purposes other than that for which it was loaned and using the money for his own personal benefit. This constitutes embezzlement under section 523(a)(4).

50. Further, without Plaintiffs' consent, the Debtor fraudulently and wrongfully took and carried away the money the Plaintiff loaned to Agile, with the intent of converting such money. The Debtor fraudulently and wrongfully appropriated the money Plaintiffs loaned to Agile, without Plaintiffs' consent, including but not limited to by utilizing it for purposes other than that for which it was loaned and using it for his own personal benefit. The Debtor appropriated such property with the intent to deprive Plaintiffs of the property instead of using and repaying it as required by the Notes. This constitutes larceny under section 523(a)(4).

51. Further, to the extent necessary, the Plaintiffs' Debt is nondischargeable under section 523(a)(4) because it was obtained in connection with embezzlement or larceny committed by Agile or committed against Agile. *Cf. Bartenwerfer v. Buckley*, 143 S. Ct. 665, 672-76 (2023)

(holding that section 523(a)(2)(A) applied to a debt obtained by fraud committed by the debtor's spouse, not the debtor).

52. The Court should therefore except the Plaintiffs' Debt from discharge under section 523(a)(4) of the Bankruptcy Code.

### Count 3: Objection to Dischargeability Under 11 U.S.C. § 523(a)(6)

53. Plaintiffs incorporate the preceding paragraphs as if set forth fully herein.

54. Under section 523(a)(6) of the Bankruptcy Code, a "discharge under section 727 [of the Bankruptcy Code] does not discharge an individual of any debt . . . for willful and malicious injury by the debtor to another entity or to the property of another entity[.]" 11 U.S.C. § 523(a)(6).

55. The Debtor acted deliberately and intentionally to injure Plaintiffs when he converted the money they had loaned to Agile and utilized the money for purposes other than for which it was loaned. The Debtor was running a classic Ponzi scheme - taking money from new investors to pay other investors in order to maintain the appearance of a legitimate business and all the while skimming what he could. Further, at the time such loans were made, the Debtor knew, among other things, that the Plaintiffs were retired and had liquidated their retirement funds in order to make the loans. Accordingly, the Debtor knew that such deliberate and intentional actions would harm Plaintiffs at the time he took such actions.

56. The Court should therefore except the Plaintiffs' Debt from discharge under section 523(a)(6) of the Bankruptcy Code.

### Count 4: Attorneys' Fees and Costs

57. Plaintiffs incorporate the preceding paragraphs as if set forth fully herein.

58. To the extent the Plaintiffs are entitled under applicable law to attorneys' fees and costs in connection with prosecuting this Adversary Proceeding and recovering the Plaintiffs' Debt, the Plaintiffs request recovery of their attorneys' fees and costs incurred in connection with the

same. *Horton v. Robinson (In re Horton)*, 85 F.3d 625, 1996 WL 255304, at *5 (5th Cir. May 3, 1996) (unpublished) ("Attorneys' fees are non-dischargeable under § 523 when they 'stem from the same basis as the non-dischargeable debt."); *see also Cohen v. de la Cruz*, 523 U.S. 213, 220 (1998) (reasoning that the phrase "[d]ebt for" in section 523 includes not only the judgment amount found non-dischargeable, but also the "debt arising from" and "debt on account of" the misconduct giving rise to the judgment).

## VI. PRAYER

Plaintiffs respectfully request that the Court: (i) enter judgment declaring that the Plaintiffs' Debt is excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(A), (a)(4), and (a)(6); (ii) enter judgment against the Debtor for attorneys' fees and costs incurred in connection with the prosecution of this Adversary Proceeding; and (iii) grant any other such relief that Plaintiffs may show themselves to be justly entitled in law or in equity.

**DATED: July 14, 2023.**

Respectfully submitted,

By: */s/ Phillip Lamberson*
Phillip Lamberson
State Bar No. 00794134
Jason A. Enright
State Bar No. 24087475
**WINSTEAD PC**
500 Winstead Building
2728 N. Harwood Street
Dallas, Texas 75201
(214) 745-5400 (Phone)
(214) 745-5390 (Facsimile)
plamberson@winstead.com
jenright@winstead.com

**ATTORNEYS FOR CHARLES AND KATHLEEN MASON**