**EXHIBIT B**

**May Note**

# RENAISSANCE GLOBAL INVESTMENT PARTNERS, LLC

Corporate Bond Debenture

$500,000.00                                    _May 1_____, 2016

For value received, as hereinafter provided, RENAISSANCE GLOBAL INVESTMENT PARTNERS, LLC., a Texas corporation ("Maker"), promises to pay to the order of Kathleen and Charlie Mason, a resident of Dallas county, at 4242 Westway Ave, Dallas, Tx 75205 such other address as the ("Holder") of this Corporate Bond Debenture may from time to time designate in writing to Maker, the principal sum of Five Hundred Thousand Dollars (USD) $500,000 (the "Principal Amount") together with interest on the outstanding Principal Amount at the Interest Rate, as defined below. Principal and interest are payable in lawful money of the United States of America.

1. **Certain Definitions.**

    In this Note (except as otherwise expressly provided or unless the context otherwise requires) the following terms shall have the meanings specified below:

    a. "Bank Financing" shall mean one or more secured loans to be incurred by Maker from time to time from and after the Effective Date, to the extent that Maker requires additional capital for its operations, to be consummated upon substantially the following terms and conditions:

        i. Interest rate: Market rate.
        ii. Term: To be determined by the lender and Maker based on Maker's needs and then market conditions.
        iii. Security: First lien on Maker's then Current Assets
        iv. Use of proceeds: To fund operations and cash needs

    b. "Bank Lender" shall mean the lender providing the Bank Financing.

    c. "Collateral" has the meaning set forth in Section 3.

    d. "Current Assets" shall mean assets held by Maker from time to time, classified under generally accepted accounting principles, consistently applied, on a cash or accrual basis, as appropriate, as current assets, including, but not limited to, bank accounts, accounts and notes receivable and inventory.

as appropriate, as current assets, including, but not limited to, bank accounts, accounts and notes receivable and inventory.

d. "Default Event" shall have the meaning set forth herein.

e. "Default Rate" shall mean an interest rate equal to the Interest Rate plus six hundred fifty (650) basis points, but in no way to exceed the maximum rate permitted by applicable law.

f. "Effective Date" shall mean the date of this Note.

g. "Interest Rate" shall mean, absent a Default Event hereunder, an interest rate equal to Eight Percent (8.0%) per annum, and shall be computed on the basis of a 12 month year, but shall be charged for the actual number of months interest is unpaid.

h. "Maker" shall mean Renaissance Global Investment Partners, LLC, a Texas corporation.

i. "Maturity Date" shall mean the date on which the unpaid principal balance hereof, together with all unpaid interest accrued thereon shall be due and payable, which shall be the first to occur of:

   i.i. the first (1st) anniversary date hereof, which is ____May 1st____, 2017, or

   i.ii. the occurrence of a Default Event, other than and Interest Payment Default, as defined below.

j. "Note" shall mean this Note, as originally executed and as amended, modified, restated or supplemented from time to time.

k. "Operating Loan Note(s)" shall mean the promissory notes to be executed and delivered by Maker to the third parties in connection with the Operating Loans.

    l.    "Members" shall mean the shareholders of the corporation, from time to time.

    m.    "Security Agreement" shall mean that certain security agreement, dated on or about the Effective Date, executed and delivered by the Maker, whereby the Maker pledges the Pledged Interests pledged under the Security Agreement.

    n.    "Senior Debt" shall mean all indebtedness held by the Bank Lender in connection with the Bank Financing.

    o.    "Senior Lender" shall mean the Bank Lender.

2. **Payment of Principal and Interest.**

    a.    Interest. Accrued and unpaid interest shall be due and payable monthly, on the first day of each month during the term hereof, commencing on _____. Installments in the amount of Ten Thousand Dollars ($10,000) USD will be payable quarterly, on the first day of each quarter during the term hereof, commencing on __June 30th__. Additionally, any unpaid principal shall be due and payable on the Maturity Date.

    b.    Principal. No principal installments will be due until the Maturity Date.

    c.    Character and Application of Payments. All payments of principal and interest due hereunder must be made without deduction of any offset, deduction or charge. All payments made by Maker hereunder shall be applied first to any accrued but unpaid interest and subsequently to the outstanding principal under this Note.

3. **Prepayment.**

Maker may prepay this Note at any time, in whole or in part, without notice, penalty, or premium.

5. **Default.**

   a. Events of Default. The following event shall constitute an event of default (each, a "Default Event"):

      a.i. The non-payment by Maker of accrued and unpaid interest when due ("Interest Payment Default"); or

      a.ii. The non-payment by Maker when due of principal as provided in this Note following the expiration of the ten (10) day period following written notice from the Holder to Maker specifying that a payment default has occurred and requesting that same be remedied; or

      a.iii. The failure by Maker to perform any obligation or covenant contained herein or contained in any other document executed and delivered in connection herewith following the expiration of the thirty (30) day period following written notice from the Holder to Maker specifying that a covenant default has occurred, detailing the covenant in question and requesting that same be remedied; or

   b. Rights and Remedies.

      b.i. Upon the occurrence of an Interest Payment Default, interest shall thereafter accrue and be payable at the Default Rate, however, the unpaid balance of this Note shall remain payable at the Maturity Date, at which time the unpaid principal balance of this Note together with all accrued and unpaid interest shall be and become due and payable.

      b.ii. Upon the occurrence of a Default Event, other than an Interest Payment Default, the entire unpaid balance of this Note including all accrued and unpaid interest shall, at the election of the Holder, be and become immediately due and payable.

      b.iii. Upon the occurrence of a Default Event, other than an Interest Payment Default, the Holder shall have the right to pursue, any and all remedies available to Holder now or hereafter existing at law or in equity or by statute, in which event each right, power or remedy of the Holder hereof upon the occurrence of any

Default Event shall be cumulative and concurrent, and the exercise or beginning of the exercise by the Holder or transferee hereof of any one or more of such rights, powers or remedies shall not preclude the simultaneous or later exercise by the Holder hereof of any or all such other rights, powers or remedies.

c. Interest Rate After a Default Event. From and after the occurrence of a Default Event, including an Interest Payment Default, all sums due hereunder, including the unpaid principal balance of this Note and unpaid interest hereon (compounded annually) shall accrue and bear interest at the Default Rate.

6. Subordination.

a. This Note and all rights to payment hereunder are subordinated to the Senior Debt from time to time outstanding. By acceptance hereof, Holder acknowledges and agrees to any such current or future subordination.

b. On liquidation or dissolution of Maker, the indebtedness evidencing the Bank Financing and the Operating Loans shall have the following seniority and shall be repaid in the following order and priority:

b.i. First the indebtedness due by Maker in respect to the Bank Financing;

b.ii. Last to the indebtedness evidenced by the Operating Loan Notes, which shall be payable on a pari-passu basis to the holders of all of the Operating Loan Notes.

7. **Failure to Act and Waiver.**

No failure or delay by the Holder hereof to insist upon the strict performance of any term of this Note or to exercise any right, power or remedy consequent upon a default hereunder shall constitute a waiver of any such term or of any such breach, or preclude the Holder hereof from exercising any such right, power or remedy at any later time or times. By accepting payment after the due date of any amount payable under this Note, the Holder hereof shall not be deemed to waive the right either to require payment when due of all other amounts payable under this Note, or to declare a default for failure to effect such payment of any such other amount. The failure of the Holder of this Note to give notice of any failure or breach of Maker under this Note shall not constitute a waiver of any right or remedy in respect of such continuing failure or breach or any subsequent failure or breach.

8. **Transfer.**

This Note may not be transferred by the Holder without the prior written consent of Maker. In the event of any approved transfer, this Note shall be transferred on the books of Maker only by the registered Holder hereof or by its attorney duly authorized in writing or by delivery to Maker of a duly executed assignment. Maker shall be entitled to treat any Holder of record of this Note as the Holder in fact thereof and shall not be bound to recognize any equitable or other claim to or interest in this Note in the name of any other person, whether or not it shall have express or other notice thereof, save as expressly provided by the laws of Texas.

9. **Miscellaneous.**

   a. Notices. All notices and communications under this Note shall be in writing and shall be either delivered via facsimile or in person or accompanied by a signed receipt therefore or mailed first-class United States certified mail, return receipt requested, postage prepaid, and addressed to Maker at its principal executive office and to Holder at the address listed above. Any notice of communication shall be deemed given and received as of the date of such delivery or mailillg.

   b. Disclosure. The Holder acknowledges that the terms of this Note are not confidential and nothing in this Note shall prohibit Maker from disclosing the form of this Note to current or future investors in Maker.

   c. Waiver. Maker hereby waives diligence, presentment, protest and demand, notice of protest, dishonor and nonpayment of this Note, and expressly agrees that, without in any way affecting the liability of Maker hereunder, the Holder may extend any maturity date or the time for payment of any installment due hereunder, accept additional security, release any party liable hereunder and release any security now or hereafter securing this Note. Maker further waives, to the full extent permitted by law, the right to plead any and all statutes of limitations as a defense to any demand on this Note.

   d. Severability. Every provision of this Note is intended to be severable. If any term or provision hereof is declared by a court of competent jurisdiction to be illegal or invalid for any reason whatsoever, such illegality or invalidity will not affect the balance of the terms and provisions hereof, which terms and provisions will remain binding and enforceable. If any provision of this Note is invalid or unenforceable, then the other provisions shall remain in full force and effect and shall be liberally construed in favor of the Holder.

e. Headings. Headings at the beginning of each numbered paragraph of this Note are intended solely for convenience and are not to be deemed or construed to be a part of this Note.

f. Applicable Law. THIS NOTE AND THE OBLIGATIONS OF THEN PARTIES HEREUNDER SHALL BE INTERPRETED, CONSTRUED, AND ENFORCED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS, WITHOUT REGARD TO THE PRINCIPALS OF CONFLICTS OF LAWS AND THE LAWS OF THE UNITED STATES APPLICABLE TO TRANSACTIONS IN SUCH STATE.

g. Interest Rate Limitation. It is the intention of Maker and the Holder to conform strictly to the interest law applicable to this transaction ("Applicable Laws"). Accordingly:

g.i. It is agreed that notwithstanding any provision to the contrary in this Note or in any of the documents securing payment of the indebtedness evidenced hereby or otherwise relating thereto, the aggregate of all interest and any other charges or consideration constituting interest under Applicable Laws that is taken, reserved, contracted for, charged or received under the Note, or under any of the other aforesaid agreements or otherwise in connection with this transaction shall under no circumstances exceed the maximum amount of interest allowed by the Applicable Law.

g.ii. In no way, nor in any event or contingency (including but not limited to prepayment, default, demand for payment, or acceleration-of the maturity of any obligation), shall the interest taken, reserved, contracted for, charged, chargeable, or received under this Note or otherwise, exceed the maximum non-usurious amount permitted by the Applicable Laws (the "Maximum Amount"). If, from any possible construction of any document, interest would otherwise be payable in excess of the Maximum Amount, any such construction shall be subject to the provisions of this Section 8.(h). and such document shall ipso facto be automatically reformed and the interest payable shall be automatically reduced to the Maximum Amount, without the necessity of execution of any amendment or new document.

g.iii. If the Holder shall ever receive anything of value which is characterized as interest under Applicable Law and which would apart from this provision be in excess of the Maximum Amount, an amount equal to the amount which would have been excessive interest shall, without penalty, be applied to the reduction of the principal amount owing under this Note in the inverse order of its maturity and not to the payment of interest, or refunded to Maker or the other

        payor thereof if and to the extent such amount which would have been excessive exceeds such unpaid principal.

g.iv. The right to accelerate maturity of this Note does not include the right to accelerate any interest which has not otherwise accrued and unpaid on the date of such acceleration, and the Holder does not intend to charge or receive any unearned interest in the event of acceleration.

g.v. All interest paid or agreed to be paid to the Holder shall, to the extent permitted by applicable law, be amortized, prorated, allocated and spread throughout the full stated term (including any renewal or extension) of the indebtedness evidence hereby so that the amount of interest on account of the indebtedness evidence hereby does not exceed the Maximum Amount.

g.vi. If any excess of interest in such respect is provided for, or shall be adjudicated to be so provided for in this Note, then in such event (a) the provisions of this paragraph shall govern and control, (b) neither Maker nor Maker's successors or assigns or any other party liable for the payment of this Note shall be obligated to pay the amount of such interest to the extent that it is in excess of the maximum amount of interest allowed by the Applicable Law, (c) any excess shall be deemed a mistake and canceled automatically and, if theretofore paid, shall be credited on the indebtedness by evidenced hereby by the Holder (or if such indebtedness shall have been paid in full, refunded to Maker), and (d) the effective rate of interest shall be automatically subject to reduction to the maximum legal rate of interest allowed under such Applicable Law as now or hereafter construed by courts of appropriate jurisdiction.

g.vii. All sums paid or agreed to be paid the Holder for the use, forbearance or detention of this indebtedness evidence by this Note secured hereby shall, to the extent permitted by the Applicable Law applicable to this transaction, be amortized, prorated, allocated and spread throughout the full term of the Note.

g.viii. The provisions of this Section -8.(h). shall control all agreements between Maker and the Holder. All agreements between the Holder and Maker (or any other party liable with respect to any indebtedness under this Note) are hereby limited by the provisions of this Section which shall override and control all such agreements, whether now existing or hereafter arising.

IN WITNESS WHEREOF, Maker has caused this Note to be duly executed.

**RENAISSANCE GLOBAL INVESTMENT PARTNERS, LLC**, a Texas corporation

By: _____
Chris Sahliyeh
Managing Partner


_/s/ Kathleen Mason_, Individually


By: _KATHLEEN MASON_
Name: